UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| AILEEN ELIZABETH DAVIS,<br><br>                Plaintiff,<br><br>  vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,<br><br>                Defendant. | CIV. 14-5014-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Aileen Elizabeth Davis[1] filed a complaint appealing from a decision of an administrative law judge ("ALJ") denying her Supplemental Security Income ("SSI") benefits. (Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 5). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Dockets 7 & 9). The parties filed their JSMF. (Docket 10). Plaintiff filed a motion for an order reversing the decision of the Social Security Administration Commissioner ("Commissioner").[2] (Docket 12). Defendant filed motion for an order affirming the decision of the Commissioner. (Docket 14). For the reasons stated below,

---

[1]Aileen Elizabeth Davis is also known as Aileen Coyle. (Docket 13 at p. 1).

[2]Ms. Davis characterizes her filing as both a "motion for order reversing decision of the Commissioner" and a motion for "summary judgment." (Dockets 12 & 13). The court references Ms. Davis' filing as a "motion for order reversing decision of the Commissioner" in accord with the court's briefing schedule. See Docket 7 at p. 2.

Ms. Davis' motion to reverse the decision of the Commissioner is denied and defendant's motion to affirm the decision of the Commissioner is granted.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 10) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order. Ms. Davis received an initial SSI allowance on June 4, 1997, under Title XVI of the Social Security Act. Id. at ¶¶ 1, 2. Ms. Davis' stopped receiving SSI needs-based benefits in March of 2010 because portions of her husband's income were deemed attributable to her. Id. at ¶ 2. On October 12, 2010, Ms. Davis filed a new SSI application alleging a disability onset date of February 1, 1997, with a protective filing date of October 12, 2010. Id. at ¶ 3. Ms. Davis' application was denied initially on January 18, 2011, and on reconsideration on March 18, 2011. Id. Ms. Davis timely filed a request for a hearing on October 19, 2011, and a hearing was held before an ALJ on November 15, 2012. Id. On December 11, 2012, the ALJ entered a decision finding Ms. Davis was not disabled and denied SSI benefits. Id.; see also Administrative Record, pp. 21-29.[3] Ms. Davis subsequently sought review from the Appeals Council and on January 7, 2014, the Appeals Council denied the request for review. (AR at pp. 1-4). Ms. Davis then filed a complaint requesting judicial review.

---

[3]The court cites to information in the administrative record as "AR at p. ___."

(Docket 1). The ALJ's decision constitutes the final decision of the Commissioner. It is from this decision that Ms. Davis appeals.

The issue before the court is whether the ALJ's decision of December 11, 2012, is supported by the substantial evidence on the record as a whole. See Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (citation and internal quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart,

3

399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

**DISCUSSION**

"Disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR § 404.1520(a)(4). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The five-step sequential evaluation process is:

> (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or

mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998). The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 21-29). At step four of the evaluation, the ALJ concluded Ms. Davis was "capable of performing past relevant work as a housekeeper." Id. at 28.

A. **PLAINTIFF'S ISSUES ON APPEAL**

Ms. Davis identifies the following issues: (1) the ALJ improperly disregarded the opinions of her treating physicians and (2) the ALJ improperly relied on facts not in the record.[4] (Docket 13 at p. 3). The court discusses each issue in turn.

1. **Whether the ALJ Failed to Accord Adequate Weight to Dr. Hicks' Opinion**

"A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic

---

[4]Ms. Davis, in her introduction, asserts the ALJ "improperly discredit[ed] her subjective complaints," (Docket 13 at p. 3), however, no substantive argument on the issue was adduced in either her supporting or reply briefs. See Dockets 13 & 15. The court only addresses issues brought before it and as this matter was not briefed, the court does not consider it.

techniques and is not inconsistent with the other substantial evidence." House v. Astrue, 500 F.3d 741,744 (8th Cir. 2007) (citation and internal quotation marks omitted). However, "while entitled to special weight, [a treating physician's opinion] does not automatically control, particularly if the treating physician evidence is itself inconsistent." Id. (citations and internal quotation marks omitted); see also Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) ("A treating physician's opinion 'do[es] not automatically control, since the record must be evaluated as a whole.' ") (quoting Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995)). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.' " Id. (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)).

If the treating physician's opinion is not given controlling weight under 20 CFR § 416.927(c)(2), it must be weighed considering the factors in 20 CFR §§ 416-927(c)(2)-(6). See Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) ("Where controlling weight is not given to a treating source's opinion, it is weighed according to the factors enumerated . . . .").[5] An ALJ must " 'give good' reasons for discounting a treating physician's opinion." Dolph v. Barnhart, 308 F.3d 876, 878-79 (8th Cir. 2002).

---

[5]The factors enumerated in 20 CFR § 416.927(c)(2)-(6) and 20 CFR § 404.1527(c)(2)-(6) are substantively the same.

6

"The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole."  Shontos, 328 F.3d at 427 (citing Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999)); see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).  " 'Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits.' "  Shontos, 328 F.3d at 427 (quoting Nevland, 204 F.3d at 858).

A treating source opinion is generally given more weight because it usually comes from a medical professional who is "most able to provide a detailed, *longitudinal* picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 CFR § 416.927(c)(2) (emphasis added).  "In considering how much weight to give a treating physician's opinion, an ALJ *must* also consider the length of the treatment relationship and the frequency of examinations."  Whitman v. Colvin, 762 F.3d 701, 706 (8th Cir. 2014) (emphasis added) (internal quotation marks omitted) (quoting Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007)).

On October 24, 2011, Dr. Hicks performed his initial psychiatric evaluation of Ms. Davis.  (Docket 10 at ¶ 14); see also AR at p. 340.  On November 1, 2012, Ms. Davis appeared before Dr. Hicks complaining of "daily

7

anxiety." (AR at p. 348). On November 17, 2011, Dr. Hicks completed his Mental Impairment Questionnaire ("Questionnaire"). (Docket 10 at ¶ 15); <u>see also</u> AR at p. 319. When Dr. Hicks opined on Ms. Davis' mental condition, he had seen her on only two prior occasions over a span of twenty-four days.[6] Dr. Hicks' opinions do not represent a longitudinal picture of Ms. Davis' mental condition and functional capabilities but rather a snapshot taken near the outset of his treatment of her. The ALJ was entitled to give less weight to Dr. Hicks' opinion. 20 CFR § 416.927(c)(2); <u>see also</u> <u>Whitman</u>, 762 F.3d at 706.

Dr. Hicks' subsequent treatment of Ms. Davis does not mandate the ALJ afford his opinion controlling weight. Dr. Hicks completed Ms. Davis' Questionnaire on November 17, 2011, (Docket 10 at ¶ 15), prior to her return visits on November 21, 2011, April 4, 2012,[7] July 30, 2012, and August 8, 2012. (AR. at pp. 327, 329, 332, 336). Dr. Hicks' opinions regarding not only Ms. Davis' mental condition but also her degree of impairment and ability to work, therefore, do not reflect any information which might have been gained in these follow-up examinations.

Ms. Davis' assertion that Dr. Hicks' opinion is entitled to controlling weight because his opinion of Ms. Davis remained unchanged after each subsequent

---

[6]The Questionnaire completed by Dr. Hicks incorrectly notes that Dr. Hicks only saw Ms. Davis on one occasion prior to completing the Questionnaire. (AR at p. 320).

[7]On April 3, 2012, Ms. Davis saw a staff person of Dr. Hicks regarding her medication management plan with Dr. Hicks. (AR at p. 334).

8

visit is inapposite. While it is true Dr. Hicks' initial diagnosis of post-traumatic stress disorder, major depressive disorder, panic disorder with agoraphobia and anorexia nervosa is noted throughout Ms. Davis' treatment notes, Compare AR at pp. 319, 341, with AR at pp. 328, 330, 333, 337, 339, 349, Dr. Hicks' treatment notations are not a substitute for a completed mental impairment questionnaire. The court can find nowhere in Ms. Davis' post-November 17, 2011, treatment notes where Dr. Hicks opined on the degree of her impairment or her ability to work. (AR at pp. 327-37). Furthermore, as the ALJ observed, because the Questionnaire predates Ms. Davis' subsequent visits, there is no indication Dr. Hicks' opinion accounts for her subsequent treatment while on a consistent medication regimen (AR. at pp. 328, 330, 333, 337), a reported improvement in mood, id. at 336, or Ms. Davis' non-compliance with Dr. Hicks' recommendation to seek counseling. See id. at 342, 366.

Ms. Davis' assertion the ALJ erred in discounting the weight given to Dr. Hicks' opinions because they are consistent with that of Greg Swenson, Ph.D., misses the mark. Dr. Swanson examined Ms. Davis and diagnosed her with Axis I mental impairments: obsessive compulsive disorder, generalized anxiety disorder, anorexia nervosa, chronic post-traumatic stress disorder and dysthymic disorder. (AR at p. 10). The ALJ also determined Ms. Davis suffered from severe impairments which limited her ability to work. (AR at p. 23). However, "[t]he crucial question is not whether [the claimant] experienced pain, but whether [the claimant's] credible subjective complaints prevent him from

9

performing any type of work." Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003). Dr. Swanson's report does not contain an residual functional capacity ("RFC") assessment of Ms. Davis' ability to work. Because the report does not include an RFC assessment, it fails to address a threshold issue in a disability determination and fails to corroborate Dr. Hicks' RFC assessment.[8]

The ALJ gave good reasons for not assigning controlling weight to Dr. Hicks' opinions. It is not the role of the court to re-weigh the evidence. Guilliams, 393 F.3d at 801. The decision is supported by good reason and substantial evidence. Id.

After determining that Dr. Hicks' opinions should not be given controlling weight, the ALJ weighed the medical opinions in accord with the criteria enumerated in 20 CFR § 416.927(c)(2)-(6). 20 CFR § 416.927(c); see also Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (internal quotation marks omitted) (citing Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); see also Smith v. Colvin, 756 F.3d 621, 626-27 (8th Cir. 2014); Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council, SSR 96-6P (S.S.A. July 2, 1996).

---

[8]The treatment notes of Dr. Mathews and Dr. Lassegard are similarly lacking. (AR at pp. 316-18).

10

The opinions of Doctors S. Richard Gunn, Ph.D., a state-agency expert; Doug Soule, Ph.D., a state-agency expert; and Ronald Houston, Ph.D., an independent medical expert, are consistent with one another and are well supported. 20 CFR §§ 416.927(c)(3) & (4); compare (Docket 10 at ¶ 11), and (AR at pp. 56-65) (Dr. Gunn's opinion), with (Docket 10 at ¶ 13) (noting that Dr. Soule's opinion was "nearly identical" to that of Dr. Gunn), and (AR at pp. 67-78), and with (Docket 10 at ¶¶ 19-20) (providing a description of Dr. Houston's opinion), and (AR at pp. 354-70). Dr. Houston's opinion of Ms. Davis is based on the entirety of Ms. Davis' medical record, including the opinions of Dr. Hicks. See AR at p. 366. The ALJ noted that state agency physicians Drs. Gunn and Soule are familiar with the Commissioner's disability program, its evidentiary requirements and the information in Ms. Davis' case record. Id. at 28; see also 20 CFR § 416.927(c)(6).

The ALJ, when assessing Ms. Davis' RFC, concluded "Dr. Hick's [sic] opinions here are based solely upon the claimant's subjective report of her functioning as assessed that day, with no consideration of the claimant's subsequent treatment on medication . . . ." (AR at p. 28). An ALJ is permitted to make reasonable inferences. See Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008) ("[Eighth Circuit] case law permits the ALJ's reasonable inferences.") (citing Guilliams, 393 F.3d at 802 (further citations omitted).

In Ms. Davis' Questionnaire, Dr. Hicks opined Ms. Davis' capacity limitations were due to panic attacks, social isolation, decreased concentration,

11

decreased energy and agoraphobia. (AR at pp. 323-24). The clinical findings supporting Dr. Hicks' November 17, 2011, Questionnaire are contained in his October 24, 2011, initial psychiatric evaluation of Ms. Davis. (AR at p. 320). However, in the "Mental Status Examination" section of Ms. Davis' psychiatric evaluation, Dr. Hicks concluded Ms. Davis was in "no acute distress," "[h]er speech rate, coherence and articulation were acceptable," "[h]er thought processes were logical," "[h]er associations were intact," "[t]he perceptions examination yielded no hallucinations, no delusions and no paranoia," she was judged only to have "mild anxiety," she was "orientated to time, person and place," "[h]er recent and remote memory[,] attention to detail and concentration were acceptable," "[h]er range and fund of knowledge were acceptable," and "[h]er judgement, insight and impulse control were slightly decreased." Id. at 341.

In light of the discrepancies between Dr. Hicks' clinical findings and his opinion regarding Ms. Davis' capacity limitations, the ALJ's conclusion that Dr. Hicks' opinion was based on Ms. Davis' subjective reporting of her functioning is reasonable. See Bradley, 528 F.3d at 1115. The ALJ's decision to give Dr. Hicks' opinion less weight is further supported by Ms. Davis' representation that she is "attempting to get back on SSI after ending it for a couple of years" (Docket 10 at ¶ 14) and the fact that Dr. Hicks only saw her on two occasions prior to forming his opinion and completing the Questionnaire.[9] Wildman v. Astrue,

---

[9]The court notes the same rationale is applicable to the ALJ's determination not to give Dr. Hicks' opinions controlling weight. See supra.

12

596 F.3d 959, 967 (8th Cir. 2010) ("[T]he ALJ did not err when he discounted [medical] opinions because they were based largely on [claimant's] subjective complaints.") (citing Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007)); see also Whitman, 762 F.3d at 706.

The ALJ weighed the medical opinions in Ms. Davis' case in accord with 20 CFR § 416.927(c)(2)-(6), and provided good reasons supporting the decision to assign less weight to the opinions of Dr. Hicks and more weight to the opinions of the non-examining state agency and independent experts. See Smith, 756 F.3d at 626-27. It is not the role of the court to re-weigh the evidence and it cannot reverse the Commissioner's decision because the decision is supported by good reason and substantial evidence. See Guilliams, 393 F.3d at 801.

The court need not further consider the implications of Dr. Hicks' opinion regarding Ms. Davis' impairments or functional capacity. See Gates v. Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010) (The court cannot "reverse simply because some evidence supports a conclusion other than that reached by the ALJ[.]").

### 2. Reliance on Evidence not in the Record

The ALJ's reference to Ms. Davis' "history of cannabis and alcohol abuse/dependence" was harmless error. See AR at pp. 23, 26. An ALJ's error will not give rise to a reversal where there is no indication the claimant was prejudiced by the mistake. Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008). Where "[t]here is no indication that the ALJ would have decided differently . . . any error by the ALJ was therefore harmless." Id. (citing Renfrow

v. Astrue, 496 F.3d 918, 921 (8th Cir.2007)); Schow v. Astrue, 272 F. App'x 647, 651 n.2 (9th Cir. 2008); Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008) ("[T]he ALJ's opinion might not have been flawless, but it certainly rested on a sufficient factual basis to support its ultimate conclusion.").

Although Dr. Houston diagnosed Ms. Davis with "Cannabis & ETOH Abuse/Dependence Remission" (AR at p. 362), the parties agree the ALJ's reference to Ms. Davis having a "history of cannabis and alcohol abuse/dependence" was in error. See Dockets 13 at p. 14 (Ms. Davis' brief); 15 at p. 15 (brief for the Commissioner); 16 at p. 7 (Ms. Davis' reply brief). The ALJ only mentioned Ms. Davis' "history of cannabis and alcohol abuse/dependence" when listing her impairments. (AR at pp. 23, 26). The ALJ did not mention substance abuse again in the decision. Id. at 23-29. Substance abuse did not factor into any of the ALJ's findings of fact or conclusions of law, and the ALJ's decision was not premised on Ms. Davis' substance abuse. Id. The ALJ's decision is not undermined by the error. The court can find no prejudice suffered by Ms. Davis as a result of the error. The error is harmless and is not an adequate basis for reversal.

## ORDER

Based on the above analysis, it is

ORDERED that plaintiff's motion to reverse the decision of the Commissioner (Docket 12) is denied.

IT IS FURTHER ORDERED that the defendant's motion to affirm the decision of the Commissioner (Docket 14) is granted.

Dated September 21, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE